UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CENTER FOR BIOLOGICAL
DIVERSITY; SAVE LAKE SUPERIOR
ASSOCIATION; SAVE OUR SKY BLUE
WATERS; FRIENDS OF THE CLOQUET
VALLEY STATE FOREST; DULUTH
FOR CLEAN WATER,

           Plaintiffs,

v.

DEB HAALAND, Secretary of the
Interior; UNITED STATES FISH AND
WILDLIFE SERVICE; UNITED STATES
FOREST SERVICE; UNITED STATES
ARMY CORPS OF ENGINEERS,

           Defendants,

POLY MET MINING, INC.,

           Intervenor Defendant.

Case No. 22-CV-0181 (PJS/LIB)

ORDER

---

    Marc D. Fink, Allison N. Melton, Collete L. Adkins, and Eric R. Glitzenstein,
CENTER FOR BIOLOGICAL DIVERSITY, for plaintiffs.

    Jay C. Johnson, VENABLE LLP; Monte A. Mills and Aaron P. Knoll, GREENE
ESPEL PLLP, for intervenor defendant Poly Met Mining, Inc.

    Plaintiffs (a group of five environmental-advocacy organizations) bring this

lawsuit seeking review of actions of certain federal agencies relating to a proposed

mining project in northeastern Minnesota.  Poly Met Mining, Inc. ("PolyMet"), the developer of the proposed mine, intervened as a defendant.

This matter is before the Court on PolyMet's motion to dismiss.  For the reasons that follow, the Court grants the motion in part.  Specifically, the Court dismisses plaintiff's fourth cause of action insofar as it claims that the Endangered Species Act ("ESA") requires any of the defendant agencies to reinitiate consultation due to (1) alleged increases in unrelated mining activities; (2) further developments in the science and understanding of the adverse impacts of copper mining; and (3) a change to PolyMet's wetland-mitigation plan.  The Court denies PolyMet's motion in all other respects.

## I.  BACKGROUND

PolyMet proposes to build an open-pit copper-nickel mine, called the NorthMet mine, in northeastern Minnesota.   Am. Compl. ¶ 78.  The mine site is located in an area that was, at the time that PolyMet first proposed the mine, part of the Superior National Forest.  Am. Compl. ¶ 79.  PolyMet holds long-term mineral leases for the site.  Johnson Decl. Ex. A at 1.

To resolve a dispute over whether PolyMet had the right to surface mine, defendant United States Forest Service ("Forest Service") and PolyMet agreed to a land exchange pursuant to which the Forest Service gave public land in the Superior

National Forest to PolyMet and PolyMet gave private land adjacent to the Superior National Forest to the Forest Service. Am. Compl. ¶¶ 78–79; Johnson Decl. Ex. A at 1. Separately, PolyMet also sought a permit under § 404 of the Clean Water Act; that permit would allow the holder to discharge "dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344(a); Am. Compl. ¶ 123. Defendant United States Army Corps of Engineers ("the Corps") is responsible for issuing § 404 permits. 33 U.S.C. § 1344(a), (d).

Under the ESA, when a proposed action of a federal agency may affect a listed species,[1] that agency must formally consult with the federal agency that has jurisdiction over the affected species—in this case, the United States Fish and Wildlife Service ("FWS"). *Id.* 16 U.S.C. § 1536(a)(2), (3); 50 C.F.R. § 402.14(a), (e); 50 C.F.R. § 402.01(b). FWS then issues a "biological opinion" stating whether the proposed action "is likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of critical habitat." 50 C.F.R. § 402.02. Following the issuance of a biological opinion, the relevant agencies may be required to reinitiate consultation under certain circumstances, such as when "new information reveals effects of the

---

[1]Under the ESA, the Secretary of the Interior and the Secretary of Commerce are responsible for listing all species that are either "endangered" or "threatened." 16 U.S.C. § 1533(a)(1). The ESA also requires the agencies to identify "critical habitat" for each listed species. *Id.* § 1533(a)(3)(A).

action that may affect listed species or critical habitat in a manner or to an extent not previously considered."  50 C.F.R. § 402.16(a)(2).

In February 2016, FWS completed a Biological Opinion for both the land exchange and the NorthMet mine project after consulting with the Forest Service and the Corps.  Am. Compl. ¶¶ 80, 88; Fink Decl. Ex. 1 (Biological Opinion).  FWS examined the potential effects of these agency actions on three listed species: the Canada lynx, the gray wolf, and the northern long-eared bat.  Fink Decl. Ex. 1.  The Biological Opinion concluded that the NorthMet mine, "as proposed, is not likely to jeopardize the continued existence of Canada lynx, gray wolf, or northern long-eared bat" and that the mine is "also not likely to adversely modify critical habitat for lynx or wolf."  Fink Decl. Ex. 1 at 62; Am. Compl. ¶ 107.  The Forest Service relied on the Biological Opinion when it authorized the land exchange in January 2017.  Am. Compl. ¶¶ 2–3, 119–20.  Likewise, the Corps relied on the Biological Opinion when it issued PolyMet a § 404 permit in March 2019.  Am. Compl. ¶¶ 2–3, 123, 125.

In this action, plaintiffs challenge the Biological Opinion and allege that the Forest Service and the Corps violated the ESA by relying on the Opinion to approve the land exchange and the § 404 permit, respectively.  Plaintiffs further allege that, in failing to seek reinitiation of consultation under 50 C.F.R. § 402.16(a), FWS and the Corps are in ongoing violation of the ESA.

-4-

## II.  ANALYSIS

### A.  Standard of Review

Defendants move to dismiss plaintiffs' claims challenging the land exchange under Fed. R. Civ. P. 12(b)(1) for lack of standing and the remaining claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Defendants may make either a "facial" or a "factual" challenge to a court's subject-matter jurisdiction under Rule 12(b)(1).  In a facial challenge, the court "restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).  In a factual challenge, the court does not accept the allegations as true, but instead receives evidence and makes factual findings. *Id.* at 729–30.  Plaintiffs have submitted declarations in opposition to PolyMet's Rule 12(b)(1) motion, and therefore the Court will analyze PolyMet's motion as a factual challenge.

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Perez v. Does 1–10*, 931 F.3d 641, 646 (8th Cir. 2019).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.

### B.  Standing

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  To establish standing, a plaintiff must prove that it has suffered "[(1)] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.*

PolyMet argues that plaintiffs lack standing to challenge the land exchange because the harm that plaintiffs allege—the NorthMet mine's impact on their use and enjoyment of the area—is not traceable to the land exchange.  However, a member of plaintiff Save Our Sky Blue Waters submitted a declaration stating that, in 2017, she twice visited land that was then part of the Superior National Forest and that was later given to PolyMet pursuant to the land exchange.  Andresen Decl. ¶¶ 4, 26–27.  As a result of the exchange, the member (Lori Andresen) can no longer visit that land.  This injury gives her—and, by extension, Save Our Sky Blue Waters—standing to challenge the land exchange.  *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) ("an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it

seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit").

PolyMet objects that Andresen visited the site solely for the purpose of establishing standing.  Even if that were true, though, it would not matter.  In *Federal Election Commission v. Cruz*, the Supreme Court rejected an identical argument, holding that the litigants in that case had standing despite their stipulation that their "'sole and exclusive motivation [for their actions] was to establish the factual basis for'" their lawsuit.  142 S. Ct. 1638, 1647 (2022).  Moreover, Andresen has provided evidence that she did not visit the site merely to establish standing; instead, Andresen says that she enjoyed her first visit to the site and returned a second time because of "the solitude we experienced in this part of the Forest, as well as the many signs of wildlife."  Andresen Decl. ¶ 27.  Andresen describes the site as "one of the best places [in] the Superior National Forest to see signs of wolves and moose, and to potentially see wolves, moose, and lynx."  *Id.*  She further states that, now that the land exchange has occurred, she can no longer return to the site, which "negatively impacts my use and enjoyment of the Superior National Forest, as this is one area where I used to enjoy recreating."  Andresen Decl. ¶ 39.

In sum, the evidence submitted by Andresen establishes that plaintiffs have standing to challenge the land exchange. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right."); *Rumsfeld v. F. for Acad. & Inst'l Rts., Inc.*, 547 U.S. 47, 53 n.2 (2006) ("the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement").

### C.  Reinitiation

PolyMet next moves to dismiss plaintiffs' fourth claim for relief for failure to state a claim.[2]  Plaintiffs' fourth claim for relief alleges that FWS and the Corps are in violation of their duty to reinitiate consultation under the ESA and 50 C.F.R. § 402.16(a). Section 402.16(a) provides as follows:

> Reinitiation of consultation is required and shall be requested by the Federal agency or by the Service, where discretionary Federal involvement or control over the action has been retained or is authorized by law and:
>
> > (1) If the amount or extent of taking specified in the incidental take statement is exceeded;

---

[2]PolyMet also moved under Rule 12(b)(6) to dismiss plaintiffs' remaining claims on the ground that plaintiff Center for Biological Diversity has engaged in claim splitting.  The Court denied this aspect of the motion for the reasons stated on the record at the September 14, 2022 hearing.

(2) If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered;

(3) If the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion or written concurrence; or

(4) If a new species is listed or critical habitat designated that may be affected by the identified action.

Plaintiffs allege three separate types of "new information" that, according to plaintiffs, require reinitiation of consultation under § 402.16(a)(2): (1) disease has devastated the population of northern long-eared bats in the Superior National Forest, Am. Compl. ¶¶ 127–29; (2) the extent and magnitude of other mining activity in northeastern Minnesota has significantly increased, Am. Compl. ¶¶ 133–34; and (3) the Forest Service has gained a better understanding of the potential adverse impacts of a copper mine in the region, Am. Compl. ¶¶ 135–336. Plaintiffs also allege two subsequent modifications to the action that allegedly trigger the obligation to reinitiate under § 402.16(a)(3): (1) the expected size and output of the NorthMet mine have significantly increased, Am. Compl. ¶¶ 130–31; and (2) PolyMet's wetland-mitigation plan has changed, Am. Compl. ¶ 132.

The Court considers each claim in turn.

1.  Bat Population

Plaintiffs contend that a recent crash in the population of the northern long-eared bat constitutes "new information [that] reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered." 50 C.F.R. § 402.16(a)(2).  PolyMet contends that new information about the bat population does not require reinitiation because the recent population crash is due to disease and thus is not an "effect[] of the action"—the "action" being the operation of the NorthMet mine.  *See Sierra Club v. Marsh*, 816 F.2d 1376, 1387 (9th Cir. 1987) (holding that an unrelated development project could not trigger an obligation to reinitiate consultation), *abrogated on other grounds as recognized in Cottonwood Env't L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088–91 (9th Cir. 2015).

It is certainly true that the dramatic decline in the bat population is not an "effect[] of the action."  Obviously, the NorthMet mine does not even exist, and thus it could not possibly have caused the bat population to crash.  *See* 50 C.F.R. § 402.02 ("Effects of the action are all consequences to listed species or critical habitat that are caused by the proposed action, including the consequences of other activities that are caused by the proposed action."); *see also* 50 C.F.R. § 402.17(b) ("To be considered an effect of a proposed action, a consequence must be caused by the proposed action (i.e.,

-10-

the consequence would not occur but for the proposed action and is reasonably certain

to occur).").

What the Court understands plaintiffs to argue, however, is not that the "effects

of the action" will *cause the bat population to crash*—that has already happened—but that,

in light of the crash, those actions may lead to the *extinction* of the northern long-eared

bat.  As the Court understands plaintiffs' argument, the "action" is the operation of the

mine, and its "effects" include a reduction of the number of bats.  In the Biological

Opinion, FWS found that, although mining operations would likely have some impact

on the number of bats, those operations were "not likely to jeopardize the continued

existence of . . . [the] northern long-eared bat," presumably because the then-existing

population of bats was large enough to absorb the impact of mining operations.  Fink

Decl. Ex. 1 at 62; Am. Compl. ¶ 107.

Now, however, "new information" has "reveal[ed]" that mining operations

"may affect listed species . . . in a manner or to an extent not previously considered."

§ 402.16(a)(2).  That "new information"—i.e., the recent crash of the bat population—

reveals that the "effects" of the NorthMet mine "may affect listed species or critical

habitat in a manner or to an extent not previously considered"—i.e., may "jeopardize

the continued existence of . . . [the] northern long-eared bat." Fink Decl. Ex. 1 at 62.

*Sierra Club* is helpful.  In finding that "new information" about the potential

inability to implement a mitigation plan triggered the reinitiation requirement, *Sierra*

*Club* mapped its analysis onto the regulatory language as follows:

> Translating section 402.16(b) into the language of this case,
> we conclude that the COE violated the regulation by failing
> to reinitiate consultation after learning ("new information
> reveals") that the destruction and modification of marshland
> by the project ("effects of the action") could harm the
> clapper rail and the least tern ("may affect the listed
> species") because the anticipated mitigation efforts have
> been delayed and may not take place at all ("in a manner or
> to an extent not previously considered").

*Sierra Club*, 816 F.2d at 1388.

Plaintiffs' allegations in this case map onto the regulatory language in a similar

way:  FWS and the Corps may have violated § 402.16(a)(2) by failing to reinitiate

consultation after learning that the reduction in the bat population caused by the

construction and operation of the NorthMet mine ("effects of the action") could

jeopardize the continued existence of the northern long-eared bat ("may affect the listed

species in a manner or to an extent not previously considered") because the bat's

population is dramatically lower than when the Biological Opinion was prepared ("new

information") .  The Court therefore denies PolyMet's motion to dismiss this aspect of

plaintiffs' reinitiation claim.[3]

---

[3]To be clear, the Court is not holding that the crash of the bat population

(continued...)

2.  Extent and Magnitude of Additional Mining

Plaintiffs also allege that reinitiation is required due to new information that

"[t]he extent and magnitude of additional planned and anticipated sulfide copper

mining in northeastern Minnesota has significantly increased" since 2016.  Am. Compl.

¶ 133.  In support of this allegation, however, plaintiffs merely plead that two

companies are conducting exploration in the area.  Am. Compl. ¶ 133.  It is difficult to

understand how this "new information" (that two companies are exploring the area)

"reveals" that the "effects of the action" (the impact of the NorthMet mine on listed

species) "may affect listed species or critical habitat in a manner or to an extent not

previously considered" by FWS.  The complaint does not connect the dots in a plausible

way, and thus this aspect of plaintiffs' fourth claim for relief must be dismissed.

3.  New Scientific Knowledge

Plaintiffs next allege that reinitiation is required because "[t]he Forest Service has

further developed the science and expert understanding of the potential adverse

impacts of a copper mine in this region, in response to the proposed Twin Metals

copper mine within the watershed of the Boundary Waters Canoe Area Wilderness

('BWCAW')."  Am. Compl. ¶ 135.  Specifically, the Forest Service found the risk of a

---

[3](...continued)
triggered the duty to reinitiate; that issue is better left for consideration on a full record.
At this point, the Court simply holds that plaintiffs have pleaded a plausible claim for
reinitiation.

copper-nickel sulfide ore mine in the BWCAW watershed to be "unacceptable."  Am. Compl. ¶ 135.

These allegations are also insufficient to state a claim for a violation of the duty to reinitiate under § 402.16(a)(2).  Plaintiffs have merely pleaded that the Forest Service has concluded that, based on new scientific developments and expert understanding, a *different* proposed project in a *different* location poses an unacceptable risk.  Plaintiffs do not even identify the new scientific developments, much less explain how these unidentified developments reveal anything about the NorthMet mine that was not previously considered.  Consequently, these allegations are simply too conclusory to state a claim.  *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" (cleaned up)).  The Court therefore grants PolyMet's motion to dismiss this aspect of plaintiffs' fourth claim for relief.

### 4. Size and Output of NorthMet Mine

Plaintiffs allege that "[t]he expected size and output of the NorthMet Mine Project has significantly increased since the Project was analyzed by the Forest Service and the Corps."  Am. Compl. ¶ 130.  In particular, plaintiffs allege that "PolyMet is now analyzing the development of substantially higher throughputs" than were assumed by FWS in preparing the Biological Opinion.  Am. Compl. ¶ 130.  As a result, plaintiffs

-14-

argue, reinitiation is required under § 402.16(a)(3), which applies when "the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion."

PolyMet argues that the relevant "action" for purposes of § 402.16(a)(3) is the § 404 permit issued by the Corps.  Because there is no allegation that the permit has been "subsequently modified," PolyMet argues, § 402.16(a)(3) does not apply.[4]  PolyMet relies on the definition of "action," which includes "activities . . . authorized . . . by Federal agencies," including "the granting of . . . permits."  50 C.F.R. § 402.02.  But PolyMet elides relevant portions of the definition, which includes "all activities or programs of any kind authorized, . . . in whole *or in part*, by Federal agencies"—and which further covers not just the granting of permits, but also "actions directly or indirectly causing modifications to the land, water, or air."  *Id.* (emphasis added).

This language is broad enough to include the entire NorthMet mine project; indeed, the Biological Opinion itself clearly defines the "action" as the NorthMet mine project.  Fink Decl. Ex. 1 at 2–6 ("Description of the Proposed Action").  Case law also indicates that PolyMet's reading of "action" is overly narrow.  *Cf. Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 521 (9th Cir. 2010) (holding that a biological opinion's failure to

---

[4]Although PolyMet contends that it "has not in fact increased the size or output of its project," it also recognizes that this is a factual dispute that "is irrelevant at this stage."  ECF No. 40 at 17 n.46.

consider effects of the action beyond a five-year period did not "permissibly define[] the scope of the action" because "the ESA requires the biological opinion to analyze the effect of the *entire* agency action" (citation and quotation marks omitted)); *N. Alaska Env't Ctr. v. Kempthorne*, 457 F.3d 969, 981 (9th Cir. 2006) (holding that the biological opinion "properly relied on a reasonable and foreseeable oil development scenario" and that reinitiation will be required if "future actions differ from the BiOp assumptions"); *Conner v. Burford*, 848 F.2d 1441, 1453 (9th Cir. 1988) ("section 7 of the ESA on its face requires the FWS in this case to consider all phases of the agency action, which includes post-leasing activities, in its biological opinion").

The Court therefore rejects PolyMet's argument that § 402.16(a)(3) can only be triggered by the modification of a permit. PolyMet's motion to dismiss this aspect of plaintiffs' reinitiation claim is therefore denied.

### 5. Wetland Mitigation

As a wetland-mitigation plan, PolyMet originally proposed to purchase 2,169 acres in Aitkin County, Pine County, and St. Louis County, 1,603 acres of which would be restored or converted to wetland. Am. Compl. ¶ 132. PolyMet did not purchase the land, however; instead, it purchased credits from a wetland mitigation bank. Am. Compl. ¶ 132. Plaintiffs contend that this alteration in the plan triggers § 402.16(a)(3), which, again, requires reinitiation "[i]f the identified action is subsequently modified in

a manner that causes an effect to the listed species or critical habitat that was not

considered in the biological opinion."

The Court disagrees.  The Biological Opinion makes clear that PolyMet's original

wetland-mitigation plan played no role in FWS's conclusion that the NorthMet mine

will not jeopardize the listed species or threaten critical habitat.  In its discussion of the

plan, the Biological Opinion concluded that the proposed wetland-mitigation sites that

PolyMet planned to purchase were "generally unsuitable for all three species" and that

the "[o]verall effects to lynx, wolf, and [the northern long-eared bat] will most likely be

neutral; therefore, the Wetland Mitigation Sites will not be discussed further."  Fink

Decl. Ex. 1 at 47.

Plaintiffs point to the conclusion of the Biological Opinion, which recites that,

after reviewing many factors including the "Wetland Mitigation Sites," FWS concluded

that the NorthMet mine is not likely to jeopardize the continued existence of the listed

species nor adversely modify critical habitat.  Fink Decl. Ex. 1 at 62.  This general

language simply indicates that, consistent with its statutory duty, FWS *reviewed* the

wetland-mitigation plan—i.e., looked at it.  The language is insufficient to overcome the

Opinion's specific discussion of the wetland-mitigation plan, which clearly indicates

that FWS did not *rely* on the plan.  As a result, plaintiffs have failed to plausibly plead

that the mine project has changed "in a manner that causes an effect to the listed species

or critical habitat that was not considered" and have therefore failed to state a claim for reinitiation on this ground.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.     The motion of intervenor defendant Poly Met Mining, Inc. to dismiss [ECF No. 38] plaintiffs' amended complaint [ECF No. 18] is GRANTED IN PART and DENIED IN PART.

2.     The motion is GRANTED as to the Fourth Cause of Action to the extent that it alleges the following:

a.     that reinitiation is required due to the alleged increase in the extent and magnitude of additional planned and anticipated sulfide copper mining in northeastern Minnesota, Am. Compl. ¶¶ 133–34;

b.      that reinitiation is required due to the further development of the science and expert understanding of the potential adverse impacts of a copper mine in the relevant region, Am. Compl. ¶¶ 135–36; and

      c.      that reinitiation is required due to PolyMet's purchase of credits at a wetland mitigation bank in lieu of its original plan to purchase property and restore or convert it to wetland, Am. Compl. ¶ 132.

3.      The motion is DENIED in all other respects.

Dated:  February 1, 2023

      s/Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court